**WO**

JL

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

William Anthony Fly,

Plaintiff,

v.

M. Diaz, et al.,

Defendants.

No.  CV-21-00506-TUC-SHR

**ORDER**

Pending before the Court are Plaintiff William Anthony Fly's[1] Motion for Reconsideration (Doc. 106) and Motion to Seal (Doc. 111).

## I.    Background

As relevant here, in the First Amended Complaint, Plaintiff asserted claims of sexual assault, threat to safety, and equal protection based on events that occurred while she was in custody at the United States Penitentiary (USP)-Tucson. (Docs. 9, 15.)  Plaintiff sought monetary, declaratory, and injunctive relief.  (*Id.*)  Plaintiff also filed a Motion for Temporary Restraining Order.  (Doc. 14.)

In Count One, Plaintiff alleged Defendants Campbell, Vasquez, and Christiansen used excessive force against her.  (Doc. 9 at 8.)  In Count Three, Plaintiff alleged Defendants Vasquez, Gutierrez, and Wade failed to protect her from an imminent threat of assault.  (*Id.* at 10.)  In Count Five, Plaintiff alleged Defendants treated her differently;

---

[1] Plaintiff identifies as transgender and is also known as Toni Fly.  The Court will use feminine pronouns to refer to Plaintiff.

placed her at risk of sexual abuse, sexual and physical assault, sexual harassment, and rape; and denied her medical treatment, access to administrative remedies and the courts, due process, equal protection, and security in her person solely because of her transgender status. (*Id.* at 12.) Plaintiff claimed she had been denied medical care and a safe housing assignment at a female facility because she is transgender. (*Id.*) Plaintiff alleged she had been denied medically necessary "social role transition therapy," including gender affirming surgery, as well as assignment to a female facility for her health and safety. (*Id.*)

In her Motion for Temporary Restraining Order, Plaintiff sought an order requiring Defendants to: immediately provide all "gender confirmation surgeries"; immediately transfer and place Plaintiff in a female housing unit or facility with non-violent females; immediately restore Plaintiff to a single cell; restore all Plaintiff's medical treatments; restore all medical duty status accommodations and medications; restore all email, telephone, visit, and postal correspondence privileges to Plaintiff; provide all "social role" transition therapy; stop the abuse, harassment, mutilation, and rape of Plaintiff; keep Plaintiff separate from all male prisoners and staff; and stop obstructing Plaintiff's mail correspondence. (Doc. 14 at 28–29.) In addition, Plaintiff sought an order barring Defendants from ever placing Plaintiff in a Special Housing Unit, Special Management Unit, or Administrative Maximum cell, or any USP, Federal Correctional Institution (FCI) medium, or FCI low custody facility for male prisoners. (*Id.* at 28.)

On screening the First Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined Plaintiff had stated an Eighth Amendment claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for sexual assault in Count One against Defendants Campbell, Vasquez, and Christiansen; an Eighth Amendment threat-to-safety claim under *Bivens* in Count Three against Defendants Vasquez, Gutierrez, and Wade; and an equal protection claim in Count Five for injunctive relief against Defendant Howard in her official capacity only. The Court directed these Defendants to answer the claims. (Doc. 15.) The Court dismissed the other claims and

Defendants and required the remaining Defendants to respond to the Motion for Temporary Restraining Order. (*Id.*)

On September 12, 2022, Plaintiff filed a Second Emergency Motion for Temporary Restraining Order, and on October 5, 2022, she filed a Motion to Notify the Court of Ongoing and Continuous Violations. (Docs. 44, 48.) Defendants opposed Plaintiff's motions seeking injunctive relief. (Doc. 55.)

On March 1, 2023, the Court denied Plaintiff's Motions. (Doc. 71.) With respect to the excessive force claim in Count One, the Court determined Plaintiff had not shown a reasonable likelihood of success. (*Id.* at 8.) As to the threat-to-safety claim in Count Three, the Court determined Plaintiff had not shown she would suffer irreparable harm if the requested relief was not granted. (*Id.* at 10.) The Court reasoned Plaintiff had not shown she still shared a cell with the prisoner who assaulted her or would share a cell with that prisoner in the future. (*Id.*) The Court further determined Plaintiff had not shown her current cell mate threatened her and presented a serious risk of harm to Plaintiff. (*Id.*) The Court also found psychology staff had assessed Plaintiff and determined a single-cell placement was not medically necessary. (*Id.*)

With respect to the equal protection claim in Count Five, the Court noted Defendants had presented evidence Plaintiff was assigned to the USP-Tucson Sex Offender Management Program pursuant to the Federal Bureau of Prison's (BOP's) risk and placement assessment policy based on her underlying conviction and her risk of sexual victimization was assessed and determined to be moderate, allowing her to be housed in general population and to have cellmates with low risk of sexual abusiveness. (Doc. 71 at 11.) The Court also observed Defendants had presented evidence Plaintiff received hormone therapy, including prescriptions for Estriol and Spironolactone to reduce testosterone and increase estrogen, underwent blood testing to monitor her hormone levels, and continuously received refills of her prescribed medications. (*Id.*) Additionally, the Court noted BOP had presented evidence Plaintiff did not qualify to be housed in a female facility or for gender reassignment surgery based on the BOP's medical and mental health

analysis and qualifying criteria. (*Id.*) The Court concluded Plaintiff had not established a likelihood of success on her equal protection claim or irreparable harm absent the requested relief. (*Id.* at 12.)

On February 13, 2024, the Court granted Defendants' Motion for Judgment on the Pleadings or Summary Judgment. (Doc. 103.) The Court determined Plaintiff's Eighth Amendment claims in Counts One and Three would extend *Bivens* in a new context, and Plaintiff had alternative remedies to her. (*Id.* at 5–6.) The Court therefore declined to extend a *Bivens* remedy to Plaintiff's Eighth Amendment claims. (*Id.*) The Court determined Plaintiff's claim for injunctive relief in Count Five was moot because the claim related to past events occurring at a prison where Plaintiff was no longer housed, and it was not clear what injunctive relief could be fashioned in light of Plaintiff's transfer to USP-Coleman, particularly where Defendant Colbert, the current USP-Tucson Warden, was the only Defendant named in Count Five and was not employed at USP-Coleman. (*Id.* at 6–7.) The Court reasoned Plaintiff's claim for injunctive relief in Count Five must be dismissed as moot absent any indication in the record Plaintiff would be sent back to USP-Tucson in the foreseeable future or Defendant Colbert had authority to determine Plaintiff's conditions of confinement at USP-Coleman. (*Id.* at 7.)

On August 30, 2024, Plaintiff filed her Motion for Reconsideration (Doc. 106) and a Notice of Appeal (Doc. 107). On September 24, 2024, the Ninth Circuit Court of Appeals dismissed the appeal because the Notice of Appeal had not been filed or delivered to prison officials within 60 days after the Court's February 13, 2024 Order. (Doc. 109.) On December 2, 2024, Plaintiff moved to seal the entire record in her case, asserting her "safety is in imminent danger." (Doc. 111.)

## II.     Motion for Reconsideration

### A.     Effect of Notice of Appeal

Because it was untimely, Plaintiff's Notice of Appeal was not effective and did not divest the Court of jurisdiction to rule on her Motion for Reconsideration. *See Ruby v. Sec'y of U.S. Navy,* 365 F.2d 385, 389 (9th Cir. 1966) ("Where the deficiency in a notice

of appeal, by reason of untimeliness . . . is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction."); *Levine v. Regents of Univ. of Cal.*, 181 F. App'x 644, 645 (9th Cir. 2006) (stating untimely notice of appeal was not effective and did not divest the district court of jurisdiction). In any event, Plaintiff's appeal has been dismissed. The Court may consider the merits of Plaintiff's Motion.

## B.    Analysis

Plaintiff advances five arguments in support of her Motion for Reconsideration. First, Plaintiff asserts the Court erred in concluding her claims are moot. (Doc. 106 at 1–2.) Second, Plaintiff contends Defendants committed a fraud upon the Court, which warrants relief from the Judgment under Rule 60(d) of the Federal Rules of Civil Procedure. (*Id.* at 2.) Third, Plaintiff argues the Court was biased against her and this case should be reopened pursuant to 28 U.S.C. §§ 144 and 455. (*Id.* at 3.) Fourth, Plaintiff seeks injunctive relief under Rule 65 of the Federal Rules of Civil Procedure for "ongoing constitutional violations." (*Id.* at 3–12.) Fifth, Plaintiff contends the Court abused its discretion by denying her "supplemental motion" under Rule 15(d) of the Federal Rules of Civil Procedure. (*Id.* at 11.)

### 1.    Reconsideration Standard

The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992). "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Any motion for reconsideration must specifically identify the matters overlooked or misapprehended by the Court and any specific modifications being sought in the Court's Order. *Id.* If any new matters are being brought to the Court's attention for the first time, the movant must identify the reasons they were not presented earlier. *Id.* No motion for

reconsideration of an Order may repeat any oral or written argument made in support of or in opposition to the motion that resulted in the Order.  *Id.*

### 2.    Mootness

Plaintiff argues the Court "wrongfully found the instant case moot due to transfer and separation from the named Defendants" who allegedly sexually assaulted and tortured her.  (Doc. 106 at 1.)  Plaintiff contends the Federal Bureau of Prisons' Transgender Executive Counsel (BOP-TEC), which is responsible for housing determinations and placement, "continues to place [her] in harm[']s way" and transferred her to "interfere with these proceeding[s] to obstruct justice and deny [her] due process." (*Id.*)  She asserts BOP-TEC has transferred her to USP-Terre Haute, USP-Coleman, and FCI-Marianna to interfere with her court proceedings and has "suggested they will return her to USP[-]Tucson or FCI[-]Tucson to face her abusers again." (*Id.*)  Plaintiff alleges Defendant Christiansen is now the Special Investigations Administrator at FCI-Marianna and has "threatened to prove all of her [Prison Rape Elimination Act] complaints unsubstantiated or unfounded [and] to cover up rape upon her, as he did at USP[-]Tucson." (*Id.* at 1–2.)  Plaintiff argues this case "cannot be mooted" because Defendants "cannot promise or guarantee" they will "no longer place her in harm[']s way" with respect to the named Defendants.  (*Id.* at 2.)

The Court construes this portion of Plaintiff's Motion as requesting relief under Rule 60(b) of the Federal Rules of Civil Procedure.  Rule 60(b), which sets forth the grounds for relief from judgment, "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).  The moving party bears the burden of proving the existence of a basis for Rule 60(b) relief.  *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).  Although the moving party's factual allegations are to be accepted as true, mere legal conclusions, general denials, or simple assertions are insufficient to justify overturning the underlying judgment.  *Id.*

"[A] party merits relief under Rule 60(b)(6) if [s]he demonstrates 'extraordinary circumstances which prevented or rendered h[er] unable to prosecute" her case. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) (citation omitted). To show extraordinary circumstances, the party must "demonstrate both injury and circumstances beyond [her] control that prevented [her] from proceeding with the prosecution or defense of the action in a proper fashion." *Id.*

In the February 13, 2024 Order, the Court sua sponte raised mootness. *See Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (if a case has become moot, a court must raise mootness sua sponte because it is a jurisdictional issue); *Tate v. Univ. Med. Ctr. of S. Nev.*, 606 F.3d 631, 634 (9th Cir. 2010) (a court lacks jurisdiction when the issues in a case are moot). The Court observed, "When a prisoner seeks injunctive relief concerning the facility where he or she is incarcerated, the prisoner's claims for such relief become moot when the prisoner is no longer subjected to those conditions." (Doc. 103 at 7.) As noted, the Court concluded Plaintiff's claims for injunctive relief were moot.

As an initial matter, Plaintiff argues, without evidence, that BOP-TEC transferred her from USP-Tucson while this case was pending to "interfere with these proceeding[s] to obstruct justice and deny [her] due process." On May 1, 2023, after this case had been pending for nearly a year and a half, Plaintiff filed a Notice of Change of Address stating she had been transferred to USP-Terre Haute. (Doc. 83.) After her transfer, Plaintiff filed various motions, responses, and replies, including her 97-page response to the Motion for Judgment on the pleadings. There is no indication Plaintiff's transfer prevented her from litigating this case.

The Court did not err in concluding Plaintiff's claims for injunctive relief are moot. When a plaintiff seeks injunctive relief, past injury "does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). According to the BOP Inmate Locator, Plaintiff

has been released to a Residential Reentry Center (RRC) in Minneapolis, Minnesota.[2] Nothing in the record demonstrates any named Defendants are employed at the Minneapolis RRC, and there is no evidence Plaintiff is suffering an *ongoing* injury. The Court will deny Plaintiff's Motion insofar as she seeks reconsideration of the conclusion her claims for injunctive relief are moot.

### 3.    Fraud Upon the Court

Plaintiff contends Defendants committed a fraud upon the Court and moves for relief under Rule 60(d)(3) of the Federal Rules of Civil Procedure. (Doc. 106 at 2.) Plaintiff alleges "Defendants, their agents, witnesses, or other Declarants lied under penalty of perjury, with intent to deceive the Court, and did deceive the Court, as officers of the Court." (*Id.* at 2–3)

Rule 60(d)(3) allows the Court to set aside a judgment for fraud on the court. The Supreme Court has "justified the 'historic power of equity to set aside fraudulently begotten judgments' on the basis that 'tampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.'" *In re Levander*, 180 F.3d 1114, 1118 (9th Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Relief for fraud on the court must be "reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. 38, 46 (1998). The Ninth Circuit has repeatedly emphasized "[e]xceptions which would allow final decisions to be reconsidered must be construed narrowly in order to preserve the finality of judgments." *Abatti v. Comm'r*, 859 F.2d 115, 119 (9th Cir. 1988); *see also Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003); *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003).

Fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial

---

[2] *See* https://www.bop.gov/inmateloc/ (search by BOP Register Number 18658-023) (last accessed Dec. 23, 2024).

machinery can[]not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Appling*, 340 F.3d at 780 (alteration in original) (quoting *In re Levander*, 180 F.3d at 1119). A finding of fraud on the court "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995) (quoting *Abatti*, 859 F.2d at 118); *see also Appling*, 340 F.3d at 780 ("Fraud on the court requires a 'grave miscarriage of justice,' and a fraud that is aimed at the court." (internal citation omitted) (quoting *Beggerly*, 524 U.S. at 47)).

"In determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct 'prejudiced the opposing party,' but whether it 'harm[ed] the integrity of the judicial process.'" *United States v. Est. of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (alteration in original) (quoting *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989)). "Fraud on the court involves 'far more than an injury to a single litigant.'" *Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)). Although "one of the concerns underlying the 'fraud on the court' exception is that such fraud prevents the opposing party from fully and fairly presenting his case," this showing alone is not sufficient. *United States v. Sierra Pac. Indus.*, 100 F. Supp. 3d 948, 955 (E.D. Cal. 2015) (citation omitted); *see also Abatti*, 859 F.2d at 118 ("[W]e have said that it may occur when the acts of a party prevent his adversary from fully and fairly presenting his case or defense. . . . Fraud on the court must involve 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" (quoting *Toscano v. Comm'r*, 441 F.2d 930, 934 (9th Cir. 1971)).

"Non-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court." *Appling*, 340 F.3d at 780; *accord In re Levander*, 180 F.3d at 1119 ("Generally, non-disclosure by itself does not constitute fraud on the court. . . . Similarly, perjury by a party or witness, by itself, is not normally fraud on the court.").

Plaintiff has presented no evidence to support her claim Defendants committed fraud upon the Court within the meaning of Rule 60(d). She claims "Defendants, their

agents, witnesses, or other Declarants lied under penalty of perjury, with intent to deceive the Court, and did deceive the Court, as officers of the Court." Even if Plaintiff could prove her allegations, perjury, standing alone, does not amount to fraud on the Court. The Court will therefore deny this portion of her Motion for Reconsideration.

### 4.    28 U.S.C. §§ 144 and 455

As noted, Plaintiff asserts the Court should reopen this case pursuant to 28 U.S.C. §§ 144 and 455 based on the Court's purported bias against Plaintiff. Section 144 provides, "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." Plaintiff never filed a timely and sufficient affidavit averring the undersigned has a personal bias or prejudice against Plaintiff or in favor of Defendants. There is no basis to reopen this case under § 144.

Section 455 provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In addition, a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b). Plaintiff never sought recusal of the undersigned, and her attempt to do so after Judgment has been entered is improper. The Court will therefore deny Plaintiff's Motion to the extent she asks the Court to reopen this case pursuant to 28 U.S.C. §§ 144 and 455.

### 5.    Injunctive Relief

Plaintiff seeks injunctive relief pursuant to Federal Rule of Civil Procedure 65 for purported ongoing constitutional violations. (Doc. 106 at 3–4.) Specifically, Plaintiff requests an order enjoining further psychological, emotional, physical, sexual, or other constitutional harms against her; requiring her immediate placement in a "female facility" and placing Defendants "on notice to be PREA compliant"; requiring Defendants to

immediately provide her all of her gender correction surgeries, including laser hair removal, vaginoplasty, labiaplasty, facial feminization surgery, and throat shaving; requiring Defendants to use female-only visual and pat searches and escorts, "keep[ing] her away from all male inmates and staff," and using electronic body scanning technology instead of such searches; enjoining Defendants from delaying, denying, or interfering with her medical treatment; requiring Defendants to restore her 200-miligram daily dose of micronized progesterone, oxycodone, and valium; requiring Defendants to protect her from further rape, sexual or physical assault, and sexual harassment, to use her female name and pronouns, and to change her gender marker to "F" for female or "X" for intersex, or both. (*Id.* at 11–12.) Plaintiff contends an injunction to prevent further harm is mandatory in these circumstances because Defendants "continue to do irreparable harm[] upon [her]." (*Id.* at 6.) Plaintiff asserts she meets all the *Winter* factors. (*Id.* at 5–10.) *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (To obtain a preliminary injunction, the moving party must show she "is likely to succeed on the merits," she "is likely to suffer irreparable harm in the absence of preliminary relief," "the balance of equities tips in [her] favor," and "an injunction is in the public interest.").

　　　As discussed above, on March 1, 2023, the Court denied Plaintiff's motions seeking the same injunctive relief she seeks now on reconsideration. (Doc. 71.) Plaintiff could have, but did not, seek reconsideration of the Court's denial of her motions for injunctive relief, and she offers no reason for waiting nearly a year and a half after Judgment was entered to seek reconsideration. The Court declines to revisit its previous decision. Moreover, with respect to Plaintiff's allegations regarding her medical care, the Court dismissed Plaintiff's medical care claims on screening; the Court therefore could not have granted any injunctive relief with respect to her medical care. *See De Beers Consol. Mines v. United States.*, 325 U.S. 212, 220 (1945) (an injunction or restraining order is appropriate to grant "intermediate relief of the same character as that which may be granted finally," but relief is not proper when it is requested on matters lying wholly outside the issues in

the suit).  (Doc. 15 at 5.)  The Court will deny Plaintiff's request for injunctive relief under Rule 65.

### 6.    Denial of Supplemental Motion

Finally, Plaintiff asserts the Court erred in dismissing her "supplemental motion" pursuant to Rule 15(d).  (Doc. 106 at 11.)  She contends the Court misconstrued the supplemental motion due to Defendants' misrepresentations, thereby denying her due process.  (*Id.*)  Plaintiff also argues the Court abused its discretion because it "ignored" the Federal Tort Claims Act violations and Defendants' fraud upon the Court.  (*Id.*)

On February 28, 2023, Plaintiff filed a Motion for Leave to Amend Complaint (Doc. 69) and lodged a proposed Emergency Second Amended Complaint.  Plaintiff did not specify she was seeking to file a *supplemental* pleading rather than an *amended* pleading.  *See* Fed. R. Civ. P. 15(a) (amendments before trial); Fed. R. Civ. P. 15(d) (supplemental pleadings).  On June 20, 2023, the Court denied Plaintiff's Motion because she had lodged the proposed Second Amended Complaint without the redlining required under the Local Rules of Civil Procedure; added at least twelve new parties and dropped four counts; apparently attempted to merge some counts from the First Amended Complaint and add new claims not included in the First Amended Complaint; added allegations and claims regarding events that had occurred at FCI-Florence; and added claims predating the First Amended Complaint.  (Doc. 84.)  The Court determined the Motion did not comply with Rule 15.1 of the Local Rules of Civil Procedure because Plaintiff had failed to show "in what respect [the proposed SAC] differ[ed] from the pleading which it amend[ed]."  (*Id.*)  Plaintiff did not file a motion for reconsideration of the Court's Order.

Plaintiff's request for reconsideration of an Order entered more than a year and a half ago is unreasonably untimely.  Plaintiff offers no reason why she could not have sought reconsideration earlier.  In any event, the Court did not err in denying Plaintiff's Motion.  *See Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999) (setting forth standard of review and explaining denial of leave to amend is warranted if amendment "would cause prejudice to the opposing party . . . or creates undue delay");

*Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (a district court's discretion to deny leave to amend is "particularly broad" where it has previously granted leave to amend); *see also Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (a supplemental pleading under Rule 15(d) "cannot be used to introduce a separate, distinct and new cause of action" (citation and internal quotation marks omitted)).

For the foregoing reasons, Plaintiff's Motion for Reconsideration will be denied.

**III.    Motion to Seal**

In Plaintiff's Motion to Seal, filed while she was in custody at FCI-Fairton, Plaintiff asks the Court to seal "the entire record" because she has been sexually and physically assaulted "due to the findings of the Court" in her criminal proceedings; Defendants previously moved to seal information threatening the safety, security, and orderly administration of the BOP, its prisoners, and Plaintiff in particular; and prisoners at FCI-Fairton are now threatening Plaintiff and "telling other inmates to pull this case" and another one of Plaintiff's cases that was sealed in North Dakota at the request of the United States Attorney "to read what it says about Plaintiff's criminal charge." (Doc. 111 at 1.) Plaintiff alleges Defendant Christiansen and other Defendants informed prisoners of "sealed information to incite sexual and physical assault upon Plaintiff." (*Id.*) She claims prisoners are "threatening to stab her and kill her due to this information on TRULINCS and pacer.gov," and as result, she is now in the Special Housing Unit (SHU) under "elevated protective custody" status. (*Id.* at 2.) Plaintiff identifies one prisoner whom she alleges attempted to sexually abuse her in her cell and is now in the SHU "telling all inmates to beat, rape, and kill Plaintiff, and telling them to look up this instant case . . . to incite them to do this harm to Plaintiff." (*Id.*)

The public has a right to inspect judicial documents and records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Although this right is not absolute, there is a strong presumption in favor of access to judicial records. A party seeking to seal a judicial record bears the burden of overcoming this presumption by either meeting the "compelling reasons" standard if the record is a dispositive pleading or the "good cause" standard if the

record is a non-dispositive pleading. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). Moreover, the policy of promoting access to public documents dictates that only information for which there is good cause or compelling reasons to seal should be sealed. Accordingly, to the extent a party wishes to seal an entire document, rather than to redact certain information from that document, the party must provide either good cause or compelling reasons to seal all the information in that document. *See id.* at 1183. Otherwise, the party must only seek to redact information for which there is good cause or compelling reasons to seal.

Plaintiff's statements in the Motion do not warrant sealing the entire case. First, as noted above, Plaintiff has been moved to the Minneapolis RRC, and her allegations regarding her safety at FCI-Fairton are no longer relevant. Second, to the extent Plaintiff asserts her criminal case in North Dakota was sealed, it appears certain documents in her criminal case were sealed, but the entire case was not. The district court's decision in Plaintiff's criminal case to seal certain documents does not bear on this Court's decision to seal the entirety of this civil rights case. Third, Plaintiff asserts the Court previously sealed certain information in this case at Defendants' request, but, in those instances, Defendants sought to seal specific attachments to exhibits filed in response to Plaintiff's Motions for Temporary Restraining Orders due to the sensitive nature of their content and the harm this content could potentially pose to Plaintiff and other prisoners if made public. (Docs. 40, 59.) Plaintiff has not shown good cause or compelling reasons to seal the entirety of the instant case. The Court will therefore deny Plaintiff's Motion to Seal.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS ORDERED:**

    (1)    Plaintiff's Motion for Reconsideration (Doc. 106) is **denied**.

    (2)    Plaintiff's Motion to Seal (Doc. 111) is **denied**.

    (3)    This case must remain **closed**.

    Dated this 23rd day of December, 2024.

Honorable Scott H. Rash
United States District Judge